

FILED
1-8-2015
JAN 08 2015

Judge Charles P. Kocoras
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DANIEL WRIGHT

No. 13 CR 952-4

Judge Charles P. Kocoras

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant DANIEL WRIGHT, and his attorney, QUINN MICHAELIS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding indictment in this case charges defendant with obstructing, delaying and affecting commerce by robbery, in violation of Title 18, United States Code, Section 1951(a) (Count Two), and using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Three).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

2015 JAN -9 PM 4: 17

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count Two, which charges defendant with obstructing, delaying and affecting commerce by robbery, in violation of Title 18, United States Code, Section 1951(a); and Count Three, which charges defendant with using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Two and Three of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline §1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.     With respect to Count Two of the superseding indictment:

On or about January 31, 2013, at Addison, in the Northern District of Illinois, Eastern Division, Eric Rogers, Marcus Harris, and DANIEL WRIGHT, defendants herein, did obstruct, delay, and affect "commerce," and the movement of articles and

2

commodities in commerce, by "robbery," as defined in Title 18, United States Code, Section 1951(b), in that the defendants did unlawfully take and obtain cellular telephones, tablet computers, and United States currency from the person and in the presence of an employee of a Sprint store located at 1323 West Lake Street, Addison, Illinois, against the employee's will, by means of actual and threatened force, and fear of injury to that employee, in violation of Title 18, United States Code, Section 1951(a).

More specifically, on January 31, 2013, Eric Rogers recruited WRIGHT and Marcus Harris to commit an armed robbery of the Sprint store in Addison, Illinois. Prior to the robbery, Rogers instructed WRIGHT and Marcus Harris how he wanted the robbery committed. WRIGHT observed Rogers provide Harris with a .38 caliber firearm and an army style duffel bag to use during the robbery.

WRIGHT and Harris followed Rogers and Individual A to the Sprint store in Addison, Illinois. Rogers instructed WRIGHT and Harris when to enter the store to commit the robbery. At the time, WRIGHT knew Harris was armed with a firearm which Harris would use during the robbery. WRIGHT and Harris entered the Sprint store and Harris pointed the firearm at employees to move the employees to the back of the store. WRIGHT loaded the duffel bag with approximately 109 cell phones and electronic tablets valued at approximately $64,848. WRIGHT and Harris also stole approximately $590 in cash from the safe. WRIGHT and Harris fled the store with the stolen cell phones and cash. WRIGHT and Harris followed Rogers and Individual A back to their residence where WRIGHT and Harris turned

the phones over to Rogers and Individual A. Rogers paid WRIGHT approximately $500 for committing this robbery.

The defendant acknowledges that, at the time of the Addison Sprint store robbery referenced above, the Sprint store was engaged in interstate commerce, and purchased supplies and sold inventory that were produced outside the state of Illinois. The defendant further acknowledges that the robbery depleted the assets of the Sprint store.

      b.     With respect to Count Three of the superseding indictment:

On or about January 31, 2013, at Addison, in the Northern District of Illinois, Eastern Division, Eric Rogers, Marcus Harris, and DANIEL WRIGHT, defendants herein, did use, carry, and brandish a firearm during and in relation to a crime of violence for which they each may be prosecuted in a court of the United States, namely, a robbery affecting commerce in violation of Title 18, United States Code, Section 1951(a), as charged in Count Two; in violation of Title 18, United States Code, Section 924(c)(1)(A) and 2.

More specifically, on or about January 31, 2013, Rogers, Harris, and WRIGHT committed an armed robbery of the Sprint store located at 1323 West Lake Street, Addison, Illinois. During the robbery, Harris used, carried, and brandished a .38 caliber firearm that had been provided to him by Rogers. WRIGHT knew that Harris was armed and that Harris intended to use the firearm during the robbery. Harris and WRIGHT entered the store, while Rogers remained outside the store. Once inside the store, Harris pulled out the firearm and ordered

4

the employees to the back room of the store. At gunpoint, Harris ordered one of the employees to open up the locked cabinets containing the cell phones and tablet computers. Harris and WRIGHT then took the phones and cash and fled the store.

7. Defendant, for purposes of computing his sentence under Guideline §1B1.2, stipulates to having committed the following additional offense:

**Stipulated Offense**

On or about January 28, 2013, at Schererville, in the Northern District of Indiana, defendant DANIEL WRIGHT did obstruct, delay, and affect "commerce," and the movement of articles and commodities in commerce, by "robbery," as defined in Title 18, United States Code, Section 1951(b), in that the defendant did unlawfully take and obtain cellular telephones and United States currency from the person and in the presence of an employee of a T-Mobile store located at 1150 U.S. 41, Schererville, Indiana, against the employee's will, by means of actual and threatened force, and fear of injury to that employee, in violation of Title 18, United States Code, Section 1951(a).

More specifically, on or about January 28, 2013, Eric Rogers and Individual A recruited WRIGHT and Marcus Harris to commit a robbery. Eric Rogers and Individual A provided WRIGHT and Harris with a .38 caliber handgun, ski masks, and gloves to use during the robbery.

Harris entered the T-Mobile store carrying a .38 caliber handgun and ordered all the employees to the ground at gunpoint. While Harris held the employees at gunpoint, WRIGHT loaded up a duffel bag with cell phones and cash from the safe.

WRIGHT and Harris forced the employees into the phone cage and fled the store with the stolen phones. WRIGHT and Harris returned to Chicago and turned over the stolen phones to Eric Rogers and Individual A. WRIGHT was paid $4,000 by Eric Rogers and Individual A for his involvement in the Schererville robbery.

In total, WRIGHT and Harris stole approximately 75 phones and cash valued at approximately $55,000, belonging to the custody, care, and control of the T-Mobile store.

8. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding charged crimes and related conduct.

## Maximum Statutory Penalties

9. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count Two carries a maximum sentence of 20 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

b. Count Three carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of seven years. The sentence of imprisonment on Count Three is required to be consecutive to any other sentence

imposed. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Three also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Three, the judge also may impose a term of supervised release of not more than five years.

        c.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

        d.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

        e.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is seven years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

    10.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

    11.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.      **Offense Level Calculations**.

**Count Two**

i.      The base offense level is 20, pursuant to Guideline § 2B3.1.

ii.      Pursuant to Application Note 4 to Guideline § 2K2.4, the enhancement in Guideline § 2B3.1(b)(2) does not apply because defendant is subject to a statutory consecutive sentence under 18 U.S.C. §924(c).

iii.      Because the victims were physically restrained to facilitate the commission of the offense and to facilitate escape, the offense level is increased by two levels pursuant to Guideline § 2B3.1(4)(B).

iv.      Because the loss exceeded $50,000 but was less than $250,000, the offense level is increased by two levels pursuant to Guideline §2B3.1(b)(7).

**Count Three**

v.      Pursuant to Guideline §2K2.4, the Guideline sentence for Count Three is a minimum term of imprisonment of 84 months, as set forth in Title 18, United States Code, Section 924(c)(1)(A)(ii).

8

**Stipulated Offense**

vi.    The base offense level is 20, pursuant to Guideline § 2B3.1.

vii.    Because a firearm was brandished, the offense level is increased by five levels pursuant to Guideline §2B3.1(b)(2)(C).

viii.    Because the victims were physically restrained to facilitate the commission of the offense and to facilitate escape, the offense level is increased by two levels pursuant to Guideline § 2B3.1(4)(B).

ix.    Because the loss exceeded $50,000 but was less than $250,000, the offense level is increased by two levels pursuant to Guideline §2B3.1(b)(7).

x.    Accordingly, the offense level for the Stipulated Offense is 29.

**Grouping**

xi.    Pursuant to Guideline §3D1.2(d), Count 2 and the Stipulated Offense are not grouped together and each offense is a separate group.

xii.    Pursuant to Guideline §2K2.4(b) and 3D1.1(b)(1), the grouping rules do not apply to Count 3.

**Combined Offense Level Under Guideline §3D1.4**

xiii.    The group with the highest offense level is the Stipulated Offense with an offense level 29.  That group is assigned 1 unit pursuant to Guideline §3D1.4(a).

9

xiv.  Count Two is between 5 to 8 levels less serious than the highest offense level.  Therefore, pursuant to Guideline §3D1.4(a), the Count 2 group is assigned one-half unit.

xv.  Therefore, there are a total of one and one-half units.

xvi.  Pursuant to Guideline §3D1.4, when the number of units is one and one-half, then 1 level is added to the offense level.  Therefore, the total adjusted offense level is 30 for Count Two and the Stipulated Offense.

## Acceptance of Responsibility

xvii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xviii.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

10

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 5 and defendant's criminal history category is III:

      i.    On or about September 14, 2012, defendant was convicted of ~~attempted robbery~~ [handwritten: OPAM D.W BATTERY] in the Circuit Court of Cook County and sentenced to 126 days' imprisonment. Pursuant to Guideline § 4A1.1(b), defendant receives two criminal history points for this sentence.

      ii.    On or about September 23, 2013, defendant was convicted of armed robbery in the Circuit Court of LaPorte County and sentenced to 6 years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level on Count Two is 27, which, when combined with the anticipated criminal history category of III, results in an anticipated advisory sentencing guidelines range of 87 to 108 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of seven years' imprisonment on Count

Three, which is required to be consecutive to any other term of imprisonment imposed on defendant.

   e.  Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

   f.  Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

12.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

13.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart from the combined total of the following: (a) the low end of the applicable guideline range on Count Two; and (b) the statutory minimum consecutive term of imprisonment of seven years on Count Three, and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

14.     If the government moves the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is,

13

the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 60 percent of the combined total of the following: (a) the low end of the applicable guideline range on Count Two; and (b) the statutory minimum consecutive term of seven years on Count Three. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

15.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, this Agreement will not be governed, in any part, by Fed. R. Crim. P. 11(c)(1)(C), the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

16.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to the victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

17.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

18.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 952.

20.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other

person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not

16

convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      viii.      With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to

determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

      c.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been

expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

22.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for

obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

28.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____1 – 8 – 15_____

Zachary T. Fardon by JCBP
ZACHARY T. FARDON
United States Attorney

David Wright
DANIEL WRIGHT
Defendant

CHRISTOPHER V. PARENTE
Assistant U.S. Attorney

Quinn A Michaelis
QUINN MICHAELIS
Attorney for Defendant